IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROEL ERNESTO VASQUEZ,<br>TDCJ NO. 1180593,<br><br>Plaintiff,<br><br>v.<br><br>M.D. ABBAS KHOSHDEL, et al.,<br><br>Defendants. | § § § § § § § § § § | CIVIL ACTION NO. H-13-2456 |

**MEMORANDUM OPINION AND ORDER**

Roel Ernesto Vasquez, an inmate at the Wynne Unit of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a civil rights complaint under 42 U.S.C. § 1983 claiming that he was denied adequate medical care. The court ordered Vasquez to submit a more definite statement regarding his claims and allegations. When Vasquez failed to submit a timely response, the court dismissed his complaint for want of prosecution. After the complaint was dismissed the court received Vasquez's more definite statement. After reviewing the complaint, the court will set aside the dismissal for want of prosecution and will dismiss this action as frivolous.

**I. Claims and Allegations**

Vasquez names the following officials as defendants in this action: Dr. Abbas Khoshdel, MD; PA Charles Nagel; PA Deborah Quient; Dr. David Seals, DDS; and Warden Kevin Mayfield. Vasquez claims that he was denied adequate medical care and that the

defendants were deliberately indifferent to his serious medical needs.

Vasquez asserts that he has had problems with his mouth and throat. He states that fever blisters began forming on the roof of his mouth and at the back of his tongue sometime in 2005. Plaintiff's More Definite Statement, Docket Entry No. 7, p. 5. He also began experiencing soreness in his throat and swollen tonsils. Vasquez first attributed his maladies to stress, but in 2010 he observed wart growths on his tongue. In 2011 the growths spread to the roof of his mouth. By 2013 Vasquez observed similar growths on his genitals. Among the difficulties that Vasquez experienced with the growths was a bleeding tongue while tooth brushing. Id.

Vasquez states that he sought help and was given various medications each time he was seen. Id. In July of 2010, he had a "tele-health medical visit" with a UTMB (University of Texas Medical Branch) physician named Dr. Prince. Id. at 6. Dr. Prince asked Vasquez if he wanted Interferon treatment for his Hepatitis C condition. When Vasquez agreed, Dr. Prince scheduled him for a liver sonogram in September of 2010. Dr. Prince informed Vasquez during their next visit that his blood work indicated cancer and scheduled him for more blood work and an Isolated Tumor Cell (ITC) scan to verify if Vasquez did have cancer. Id.

During his following visit, Dr. Prince told Vasquez that he did not have cancer but that he could not receive Interferon because of his abnormal blood levels. Docket Entry No. 7, p. 7. Dr. Prince told Vasquez that he would reschedule him for a follow-up in a year; however, Vasquez states that he has not seen Dr. Prince since that visit.

Vasquez has also been treated by Dr. Khoshdel. Vasquez states that Khoshdel prescribed a non-aspirin medication on September 20, 2011. Docket Entry No. 7, p. 8. He also prescribed chlorphen (chlorphenamine), an antihistamine used to combat the throat irritation. Dr. Khoshdel saw Vasquez again on March 19, 2012, and told him that the bumps were taste buds and were not cancerous. Docket Entry No. 7, p. 2. Vasquez filed a grievance challenging Dr. Khoshdel's findings and he requested an examination by PA Nagel. After examining Vasquez sometime on or about May 18, 2012, Nagel concluded that the bumps had formed as a result of allergies. Id. at 2-3. Dr. Khoshdel concurred with Nagel's diagnosis. Id. at 3.

Vasquez continued to submit sick calls seeking medical help, and Nagel saw him again after he submitted an emergency sick call on December 19, 2012. Id. Nagel allegedly agreed with Vasquez's assessment that something was very wrong with him. Nagel ordered more blood tests and prescribed benadryl, another antihistamine, for Vasquez on January 18, 2013. Id. Vasquez states that the

benadryl did not cure his condition but it did help alleviate the symptoms. Docket Entry No. 7, p. 8. Vasquez also contends that he never received the results of the blood tests although he made two requests to see them. Id. at 3.

Vasquez saw Dr. Khoshdel again soon afterwards, and more blood tests were ordered. Id. Dr. Khoshdel also prescribed heartburn medication for Vasquez. Id. PA Quient examined Vasquez on May 17, 2013. After the examination Quient took Vasquez off benadryl and prescribed loratadine, another antihistamine. Id. at 4. Vasquez complains that Quient conducted her examination without using an endoscope and that she failed to even look inside his mouth. Id.

Vasquez spoke to Nagel about his problem while Nagel was making his sick calls on May 22, 2013. Id. Nagel allegedly responded that Quient took Vasquez off benadryl because they were no longer issuing the medication. Nagel also reviewed Vasquez's records and saw that he had been seen twice in the past year by a dentist, Dr. Seals. Nagel told Vasquez that Dr. Seals would have noted if there had been a problem. Id. Nagel then prescribed cyproheptadine, another antihistamine, and told Vasquez that his lab tests were normal. Id.

Vasquez states that he saw Quient not long after his visit with Nagel. Id. After examining Vasquez's mouth briefly with an endoscope, Quient told him that he had bad allergies and prescribed

4

a steroid shot. Dr. Seals examined Vasquez on May 31, 2013, and told him afterwards that everything was normal. Id.

Vasquez was apparently dissatisfied with the various medical providers' actions, and on March 20, 2013, he sent an I-60 Memorandum Request to Warden Mayfield informing him of his problems in getting medical help. Docket Entry No. 7, p. 3. Vasquez claims that he told Warden Mayfield that Dr. Khoshdel was deliberately indifferent to his serious medical needs and that he needed to see a "free world" physician. Vasquez alleges that the request went unanswered. However, Mayfield did respond to a second request from Vasquez, dated May 15, 2013. Docket Entry No. 7, p. 3. Mayfield answered that the unit physicians had the authority to make determinations about inmates' medical conditions and the necessary treatments and that he could not direct them. Id.

Vasquez admits that he has been seen numerous times and has been given numerous medications. However, he asserts that the defendants have incorrectly diagnosed his condition and have prescribed the wrong treatment. Id. at 9. He contends that it is obvious that something is wrong with him and that his health is deteriorating. Vasquez seeks an injunction granting him access to a free world doctor. He also seeks monetary damages.

## II. Analysis

Vasquez's prisoner civil rights complaint is subject to dismissal if he cannot (1) allege a violation of a right secured by

5

the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. See Moore v. Willis Independent School Dist., 233 F.3d 871, 874 (5th Cir. 2000), citing Lefall v. Dallas Independent School District, 28 F.3d 521, 525 (5th Cir. 1994). As a prisoner in the custody and care of the TDCJ-ID, Vasquez has a right to basic treatment in response to his serious medical needs. Estelle v. Gamble, 97 S.Ct. 285, 290 (1976).

Although Vasquez is entitled to medical attention, he does not have a right to the best treatment available and there is no guarantee that his ailments will be successfully treated. Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). To establish a claim that he was denied medical treatment under the Eighth Amendment, Vasquez must show that the defendants were aware of facts from which they could infer there was an excessive risk to Vasquez's health or safety and that they actually concluded that Vasquez was exposed to potential harm. Herman v. Holiday, 238 F.3d 660, 664 (5th Cir. 2001), citing Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998). A showing of negligence or malpractice will not suffice. Estelle, 97 S.Ct. at 292; Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999).

The deliberate indifference issue has both an objective and a subjective component. Wilson v. Seiter, 111 S.Ct. 2321, 2324 (1991); Lawson v. Dallas County, 286 F.3d 257, 262 (5th Cir. 2002).

The first, objective component requires that the alleged deprivation relates to a serious need. Id. The second, subjective component requires that the charged official has acted with a sufficiently culpable state of mind. Id.

Vasquez states that he has suffered with problems in his mouth and throat for an extended period of time. It is arguable that first element has been met because Vasquez's condition does appear to affect his health and the defendants apparently are aware of some problem. See Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). The second element concerns the defendants' response to Vasquez's condition. Defendants are not culpable unless they knew of a serious medical condition and disregarded it. Brewer v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009).

It is undisputed that the defendants responded to Vasquez's complaints about his mouth and throat by examining him and giving him medications for his complaints. Vasquez recounts numerous visits and tests. He also lists at least a half dozen medications. The defendants' actions undermine his claim of deliberate indifference. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Mendoza v. Lynaugh, 989 F.2d 191, 193-95 (5th Cir. 1993). Vasquez contends that the defendants violated his rights because his medication was wrong and that the defendants should have known that his condition was more serious than an allergic reaction. Vasquez acknowledges that each of the

defendants examined him and made their diagnoses. Dr. Khoshdel, PA Nagel and PA Quient each prescribed medications to treat allergies which they believed to be Vasquez's malady. Dr. Seals did not prescribe any medications because he concluded that Vasquez had no abnormalities needing treatment.

Although there may be some question about the severity of Vasquez's condition, there is no doubt that the defendants responded to his complaints by providing medication that they believed addressed his needs. Vasquez's disagreement with the opinions of the TDCJ health workers does not amount to deliberate indifference. Sama v. Hannigan, 669 F.3d 585, 590-591 (5th Cir. 2012); Gobert, 463 F.3d at 346; Banuelos, 41 F.3d at 235. The fact that there may have been some disagreement among the physicians and other health care workers over Vasquez's ailment also fails to support a claim of deliberate indifference. Stewart v. Murphy, 174 F.3d 530 (5th Cir. 1999). Vasquez has also failed to assert a claim against Dr. Seals who determined that his condition was normal. See Hay v. Thaler, 470 F. App'x 411, 416 (5th Cir. 2012).

Vasquez states that Warden Mayfield deferred to the decisions of the health care providers. Warden Mayfield cannot be held liable because he did not have the authority or the responsibility to respond to Vasquez's health care complaints. Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001); Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) (prison officials are entitled to rely on the

expertise of trained health care providers to assess and respond to prisoner's health and safety needs). Moreover, Warden Mayfield cannot be held vicariously liable for the actions of other officials regardless of whether he has any authority over them. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009); Rios v. City of Del Rio, 444 F.3d 417, 425 (5th Cir. 2006).

Vasquez filed this action while he was incarcerated and has moved to proceed In Forma Pauperis. Prisoner complaints shall be dismissed if they lack an arguable basis in law or fact. 28 U.S.C. § 1915(e); Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999). Given Vasquez's responses to the order for more definite statement, the court has determined that he has had a fair opportunity to state his best case. Jones v. Greninger, 188 F.3d 322, 326-27 (5th Cir. 1999); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986). Vasquez's prisoner civil rights complaint shall be dismissed under 28 U.S.C. § 1915(e) because he has failed to state a claim on which relief can be granted.

### III. Conclusion

The court **ORDERS** the following:

1. The Memorandum and Order (Docket Entry No. 8) and Final Judgment (Docket Entry No. 9) dismissing this action for want of prosecution are **WITHDRAWN**.

2. The prisoner civil rights complaint (Docket Entry No. 1), filed by Inmate Roel Ernesto Vasquez, TDCJ No. 1180593, is **DISMISSED** as frivolous. 28 U.S.C. § 1915(e).

3.  The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties; the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas 78711, Fax Number (512) 936-2159; and the Pro Se Clerk's Office for the United States District Court, Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas 75702.

**SIGNED** at Houston, Texas, on this 30th day of October, 2013.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE